UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>World Marketing Chicago, LLC, *et al.*,[1]<br><br>    Debtors.<br><br>――――――――――――――――――――<br><br>Norman B. Newman, solely as Liquidating Trustee of the World Marketing Liquidating Trust, successor in interest to the Official Committee of Unsecured Creditors of World Marketing Chicago, LLC, *et al.*,<br><br>    Plaintiff,<br>v.<br><br>Associated Bank, National Association,<br><br>    Defendant. | Case No. 15bk32968<br><br>Chapter 11<br><br><br><br>Adversary No. 16ap00019<br><br>Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

    Before the court is the Motion for Summary Judgment [Adv. Dkt. No. 57] (the "Motion") brought by Associated Bank, National Association ("Associated"), in the above-captioned adversary case (the "Adversary"). The Motion is opposed by Norman B. Newman (the "Trustee"), solely as the Liquidating Trustee of the World Marketing Liquidating Trust and the successor in interest to the Official Committee of Unsecured Creditors (the "Committee") of World Marketing Chicago, LLC, *et al.* (collectively, the "Debtors"). This matter turns on whether expert evidence and the underlying facts relied on by the expert are admissible for the purposes of creating a genuine issue of material fact in dispute, thus barring entry of summary judgment.

    For the reasons set forth more fully below, upon review of the parties' respective filings and after conducting a hearing on the matter, the court finds that the parties' dispute regarding the valuation methodology upon which the expert relies does not render the expert evidence inadmissible for these purposes. The report concludes that the Debtors were insolvent when they

---

[1]     The Debtors are World Marketing Chicago, LLC (Case No. 15bk32968), World Marketing Dallas, LLC (Case No. 15bk32977) and World Marketing Atlanta, LLC (Case No. 15bk32975). The cases are jointly administered under Case No. 15bk32968.

transacted with Associated, which Associated disputes. This creates a genuine issue of material fact and Associated is not therefore entitled to judgment as a matter of law. The Motion is, therefore, by a separate order entered concurrent herewith, denied.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"), or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c); *In re Radco Merch. Servs., Inc.*, 111 B.R. 684, 686 (N.D. Ill. 1990). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

A proceeding to determinate, avoid, or recover fraudulent conveyances arises only as a result of a case under the Bankruptcy Code and is statutorily specified as a core proceeding. 28 U.S.C. § 157(b)(2)(H). It follows that a motion for summary judgment under Civil Rule 56 relating to the foregoing is also a core proceeding.[2] 28 U.S.C. §§ 157(b)(1) & (2).

Accordingly, determination of the Motion is within the scope of the court's jurisdiction and constitutional authority.

## BACKGROUND

On a motion for summary judgment, the court draws all reasonable inferences and resolves all genuine facts in dispute in favor of the nonmovant. *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055,

---

[2] Furthermore, neither party has challenged this court's jurisdiction or constitutional authority, so their consent to this court is implied. *See Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2016) ("The parties' consent was implicit, but implied consent is good enough[.]") (*citing Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1948 (2015) ("nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express")).

1057 (7th Cir. 2000). The following background reflects the facts which were contained in the submissions of the Trustee,[3] unless otherwise indicated.

It appears that on August 27, 2014, the Debtors' parent company, World Marketing Holdings, LLC ("Holdings"), acquired the assets and subsidiaries of World Marketing Inc. from BH Media Group Inc., a subsidiary of Berkshire Hathaway Inc. Resp., at p. 2. It further appears that Holdings then reorganized the subsidiaries as the three Debtors. Trustee's Stmt., at p. 3. Holdings is the sole owner of each Debtor and the Debtors are Holdings' sole subsidiaries. *Id.*, at p. 4.

Both the Trustee and Associated agree that on October 17, 2014 (the "Loan Closing Date"), Associated and Holdings entered into a credit agreement (the "Credit Agreement") in which Associated agreed to make a revolving loan (the "Loan") to Holdings with a facility cap up to $6 million, with the apparent purpose of providing working capital to Holdings and the Debtors. First Amended Complaint [Adv. Dkt. 20] (the "Complaint"), at p. 5; Trustee's Stmt., at pp. 4-5. The Loan appears to be based on a borrowing formula. Trustee's Stmt., at p. 4.

In connection with the Loan, on the Loan Closing Date, the Debtors and Robert M. Kraft, Robert W. Kraft and Blue Streak Holdings, LLC (collectively, the "Guarantors" and each, individually, a "Guarantor"), executed an unconditional and absolute guaranty as a condition of the Loan, subjecting each Guarantor to joint and several liability for the Loan's full amount and all obligations owed by Holdings to Associated under the Credit Agreement (the "Guaranty"). Resp., at p. 2. As security, the Debtors granted Associated a security interest in substantially all of the Debtors' assets (the "Liens"). Trustee's Stmt., at p. 9.

By July 10, 2015, Holdings had defaulted under the Credit Agreement and Associated had issued a default notice to Holdings and the Debtors. *Id.*, at p. 10. On or about September 10, 2015, Associated swept the Debtors' deposit accounts of approximately $3.2 million and applied those funds towards the outstanding Loan balance. *Id.*, at pp. 10-11.

After the default and sweep, on September 21, 2015, Associated entered into a forbearance agreement with Holdings and the Guarantors, in which Holdings and the Debtors reaffirmed all outstanding debts and granted Associated a full and complete release of any and all claims in exchange for Associated forbearing from the exercise of available rights and remedies, unfreezing Holdings' and the Debtors' deposit accounts, and advancing an additional $1.3 million under the existing Loan. *Id.*, at p. 11.

PROCEDURAL HISTORY

On September 28, 2015, each of the Debtors filed a voluntary petition for bankruptcy protection under chapter 11.

On January 11, 2016, the Committee commenced the Adversary, styled as *The Official Committee of Unsecured Creditors of World Marketing Chicago, LLC, et al. v. Associated Bank, National*

---

[3]  *See* Liquidating Trustee's Response in Opposition to Associated Bank, National Association's Motion for Summary Judgment [Adv. Dkt. No. 73] (the "Response"); Liquidating Trustee's Statement of Material Facts in Support of the Response [Adv. Dkt. No. 73-1] (the "Trustee's Statement").

3

*Association*, Adv. No. 16ap00019 (Bankr. N.D. Ill. 2016) [Adv. Dkt. No. 1], against Associated. In the Adversary, the Committee sought to avoid the Guaranty and Liens, and to recover all sums previously taken by Associated pursuant to the Guaranty and Liens for the Debtors' bankruptcy estates.

On March 24, 2016, Associated sought dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy proceedings by Federal Bankruptcy Rule of Procedure 7012, which the Committee opposed.[4] On June 28, 2016, the court dismissed counts XIX-XXII of the Complaint, but permitted the Committee to proceed on the remaining counts, including several fraudulent transfer claims.[5]

Associated now moves for summary judgment, alleging that the Trustee[6] has no evidence to support the fraudulent transfer claims brought under the Bankruptcy Code and chapter 242 of Wisconsin state law, the Wisconsin Uniform Fraudulent Transfer Act, Wis. Stat. Ann. § 242, *et seq.* (West 2017) (the "Wisconsin UFTA").[7] Associated contends that the Debtors were not insolvent on the Loan Closing Date. Associated further contends that the Trustee cannot show that the Loan resulted in unreasonably small capital for the Debtors or that the Loan caused the Debtors to incur debts beyond their ability to pay as the debts matured, and that, as a result, judgment must be rendered in Associated's favor.

In opposing the Motion, the Trustee offers the expert opinion of Michael L. Atkinson ("Atkinson"), his expert report [Adv. Dkt. No. 73-2] (the "Report") and his declaration [Adv. Dkt. No. 73-2]. Atkinson is a managing director in the corporate restructuring and litigation services practice of the risk-management consulting firm Proviti, Inc., is a certified public accountant, and has testified as an expert in numerous other bankruptcy cases. In the Report, Atkinson concludes the Debtors were insolvent on the Loan Closing Date. He does so by applying three separate solvency tests: the balance sheet test, the inadequate capital test, and the inability to pay debts as they became due test.

In the Reply in Support of its Summary Judgment Motion [Adv. Dkt. No. 75] (the "Reply"), Associated argues that the expert evidence is inadmissible, and thus does not overcome Associated's allegations of no evidence. Associated does so in the context of the Report's conclusions on

---

[4]    Specifically, Associated alleged the Committee did not meet its burdens with respect to pleading that the Debtors were insolvent or rendered insolvent as of the Loan Closing Date and that Associated did not provide reasonably equivalent value for the Guaranty or the Liens. *See* Associated Bank, National Association's Motion to Dismiss Adversary Complaint [Adv. Dkt. No. 22].

[5]    This court granted the motion in part to dismiss counts XIX-XXII of the Complaint. *See* Order Granting in part and Denying in Part Associated Bank, National Association's Motion to Dismiss Adversary Complaint [Adv. Dkt. No. 38]. What remained after that ruling were a combination of state and federal law fraudulent transfer claims, preference claims and claims for recovery of the foregoing.

[6]    After a liquidating plan was confirmed in the Debtors' bankruptcy cases and the Committee's role was therein supplanted by the Trustee's, the Complaint was amended to replace the Committee with the Trustee as plaintiff. *See* Order Changing Case Caption dated Feb. 16, 2017 [Adv. Dkt. No. 64].

[7]    Holdings has its principal place of business in the state of Wisconsin and the Debtors are organized in the state of Wisconsin. *See* Compl., at pp. 4-5; Answer to First Amended Complaint [Adv. Dkt. No. 46] (the "Answer"), pp. 8-9, 20. The parties appear to agree that Wisconsin state law applies.

solvency, and does not further advance the allegations that the Trustee has no evidence of unreasonably small capital or inability to pay debts as they matured.

On June 14, 2017, the court conducted a hearing (the "Hearing") on the Motion, at which counsel for Associated and the Trustee presented oral arguments in support of their respective positions.

In addition to reviewing the Motion, the court has considered the arguments of the parties at the Hearing and has reviewed and considered the following filed documents relating to the Motion:

(1) the Complaint;

(2) the Answer;

(3) Associated Bank, National Association's Memorandum in Support of its Motion for Summary Judgment [Adv. Dkt. No. 57-2];

(4) Associated Bank, National Association's Rule 7056-1 Statement of Material Facts [Adv. Dkt. No. 57-3];

(5) the Response;

(6) the Trustee's Statement; and

(7) the Reply.

The court has also taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the Adversary, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## DISCUSSION

Before the court is the Motion seeking summary judgment on the remaining claims in the Complaint. Associated, the defendant, contends that the Trustee cannot meet his burden as plaintiff to show specific material facts at issue that merit a trial. The Trustee responds by offering the testimony of Atkinson and the underlying Report. While not all of the counts of the Complaint require a determination of solvency, Associated does not challenge the Trustee's Response on this level. Rather, Associated centers its Reply on the admissibility of the Report and the facts contained therein.

As a result, the court confines its analysis to this issue, and does not address the broader questions that the Trustee's Response might raise. As noted, Associated argues that the Report is based on inadmissible evidence, and by employing an objectionable methodology, is inadmissible itself. Before taking up this central issue, however, the court first considers the standards applicable to the Motion.

A.    <u>Summary Judgment Standards</u>

Summary judgment is appropriate if, first, the pleadings, discovery materials, and affidavits show that there is no genuine issue of material fact and, if so, second, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e) (made applicable to this Adversary by Fed. R. Bankr. P. 7056). The purpose of summary judgment is to allow for an early, legal disposition of a matter when no evidentiary dispute necessitates a trial. *Weber-Stephen Prod. LLC v. Sears Holding Corp.*, Case No. 13 C 01686, 2015 WL 9304343, at *4 (N.D. Ill. Dec. 22, 2015).

To succeed, a moving party must cite to materials in the record to support its assertion that no genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases in original).

To be genuinely at issue, the disputed material fact must be outcome determinative under the governing law. *Sylvester v. Martin*, 130 B.R. 930, 937 (Bankr. N.D. Ill. 1991) (Schmetterer, J.) (*citing Anderson*, 477 U.S. at 248). A genuine issue of material fact exists if, after a resolution of the disputed fact by the factfinder, "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 258. This determination is made by the court, using the standard that would be used at trial. *Valley Liquors, Inc. v. Renfield Imps., Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987) (*citing Anderson*, 477 U.S. at 252).

In summary judgment proceedings, Rule 56(c)(2) of the Federal Rules of Civil Procedure allows a party to object to material that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The standard for admissibility is not whether the evidence would be admissible at trial, but whether the evidence *could be* presented in an admissible form at trial. *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010). "The evidence need not be admissible in form, but must be admissible in content." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016). In particular, whether expert reports are determined to be admissible falls largely within the court's discretion. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704-05 (7th Cir. 2009) (noting "courts have wide discretion in deciding whether to admit expert testimony as part of summary judgment").

Summary judgment motions "are usually . . . decided on documentary evidence." *Anderson*, 477 U.S. at 251 (internal quotations omitted). At this stage, "it is not the court's function to resolve factual disputes or to weigh conflicting evidence." *Chicago Reg'l Council of Carpenters Pension Fund v. Jerald Van Der Laan (In re Van Der Laan)* 556 B.R. 366, 372 (Bankr. N.D. Ill. 2016) (Schmetterer, J.) (citations omitted). It is outside the judge's province to assess the credibility of evidence. *Anderson*, 477 U.S. at 255. Nonetheless, as noted above, the court must make preliminary, nonbinding determinations of what is or is not admissible evidence. *See Anderson*, 477 U.S. at 248.

Ordinarily, as the movant, Associated would therefore bear the initial burden of demonstrating the lack of a genuine issue of material fact by pointing to "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits"

6

that support its Motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). Once it has met that burden, the Trustee as the nonmoving party must offer evidence in response to establish that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The Trustee must offer more than mere allegations or denials in response. *See Martin*, 130 B.R. at 937 ("The response must point to specific facts showing a genuine issue for trial.") (*citing Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248).

The Supreme Court in *Celotex* did, however, open the door to a practice known as "no evidence" motions for summary judgment. *Celotex*, 477 U.S. at 319, 322-23 (reversing the Court of Appeals for the District of Columbia Circuit's determination that a defendant's motion for summary judgment was defective because it failed to cite to evidence to negate the plaintiff's allegations). Specifically, the Supreme Court stated that "[i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party"s case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

Associated argues that the Motion is just such a "no evidence" motion for summary judgment. It contends that the Trustee has no evidence supporting its claims—claims on which the Trustee bears the burden of proof at trial. In response to such a "no evidence" motion, the Trustee must provide "affirmative evidence." *See Anderson*, 477 U.S. at 256.

As noted above, the Trustee has offered the testimony of Atkinson and the underlying Report as just such affirmative evidence. But that evidence only assists the Trustee in meeting his burden if it is admissible. *See Wheatley*, 826 F.3d at 420; *CITGO Petroleum*, 561 F.3d at 704-05. Associated argues that it is not, as Atkinson chooses an incorrect method of determining insolvency. The court takes up this question next.

B.   Determining Insolvency

Associated alleges that the Trustee's fraudulent transfer claims rest upon the alleged insolvency of the Debtors on the Loan Closing Date, and, as there was no presumption of insolvency at that time, the Trustee must prove the Debtors' insolvency to succeed. Because, Associated alleges, both the Report and Atkinson's testimony are inadmissible, the Trustee has not and cannot present evidence of the Debtors' insolvency at the relevant time.

The Bankruptcy Code provides the definition of "insolvency" as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A). The Wisconsin UFTA provides a parallel definition. *See* Wis. Stat. Ann. §§ 242.02(2)-(3).

The Bankruptcy Code uses the definition differently than the Wisconsin UFTA, however. Under the Bankruptcy Code, a debtor's solvency is directly at play in constructive fraud matters, where a debtor received less than a reasonably equivalent value when an obligation was incurred or became insolvent as a result of the obligation. 11 U.S.C. §§ 548(a)(1)(B)(i) & (ii)(I). No such test exists under the Wisconsin UFTA's constructive fraud provisions. *See* Wisc. Stat. Ann. § 242.04(1)(b). Instead, solvency is a factor in determining actual fraud. *Id.* at §§ 242.04(1)(a) & (2)(i). *See generally Stapleton v. NewKey Group, LLC (In re SSK Ventures, LLC)*, Case Nos. 15 C 11224, 15 C 11226, 15 C 11253, 2017 WL 2683686, at *11 (N.D. Ill. June 20, 2017) (making similar

7

observations with respect to the Illinois Uniform Fraudulent Transfer Act, which appears to track the Wisconsin UFTA in most respects).

The Seventh Circuit recognizes insolvency as a question of fact. *Plankinton Bldg. Co. v. Grossman*, 148 F.2d 119, 125 (7th Cir. 1945). In this Circuit, a debtor is balance sheet insolvent if the fair market price of its total assets is less than its liabilities. *Covey v. Commercial Nat'l Bank of Peoria*, 960 F.2d 657, 660 (7th Cir. 1992). The valuation of assets and liabilities for the purpose of performing this analysis should be determined by expert testimony or recent appraisals. *Brandt, Jr. v. Rohr-Alpha, Inc. (In re Equip. Acquisition Res., Inc.)*, Case No. 09bk39937, Adv. No. 11ap02147, 2015 WL 11794542, at *2 (Bankr. N.D. Ill. Feb. 9, 2015) (Cassling, J.).

For the purposes of fraudulent transfer actions, the Bankruptcy Code provides three tests applicable to determining solvency: (1) the balance sheet test; (2) the "unreasonably small capital" test; and (3) the inability to pay debts as they become due test. 11 U.S.C. § 548(a)(1)(B)(ii)(II)-(III); *Paloian v. LaSalle Bank National Association (In re Doctors Hosp. of Hyde Park, Inc.)*, Case No. 00bk11520, Adv. No. 02ap00363, 507 B.R. 558, 632 (Bankr. N.D. Ill. Oct. 4, 2013) (Schmetterer, J.); *see also* 11 U.S.C. § 101(32). While the Wisconsin UFTA does not directly parallel the Bankruptcy Code here, each of the three tests do come into play. *See, e.g.*, Wisc. Stat. Ann. § 242.02(2) (providing for a balance sheet definition of insolvency); Wisc. Stat. Ann. § 242.04(1)(b)(1) (using unreasonably small as the measure of assets remaining after a transaction); Wisc. Stat. Ann. § 242.02(3) (defining insolvency in the context of inability to pay debts as they become due).

The choice of valuation method is generally outcome determinate—different methods result in different conclusions regarding solvency. In most circumstances, using one valuation standard over the other may produce varying results regarding the entity's solvency. *See Fryman v. Century Factors, Factor for New Wave (In re Art Shirt Ltd., Inc.)*, 93 Bankr. 333, 341 (E.D. Pa. 1988) (stating the inappropriate use of a valuation standard is misleading and fictionalizes the business's true financial condition).

The parties' dispute mostly centers on the first of the three tests, the Balance Sheet test. The same reasoning regarding evidence and valuation method discussed herein applies to each of the tests. As such, the other two tests will not be discussed, with the understanding that the discussion below applies equally to determinations of unreasonably small capital and inability to pay debts as they come due, with the latter of the two perhaps being more easily determined objectively. The use of the Balance Sheet test in the Report is in controversy, in particular the way by which Atkinson values the Debtors' assets in performing the balancing therein.

Assets are generally valued at their "going concern or fair market price unless a business is on its deathbed." *Schwinn Plan Comm. v. AFS Cycle & Co. (In re Schwinn Bicycle)*, 192 B.R. 477, 486 (Bankr. N.D. Ill. 1996) (Schmetterer, J.) (citations omitted); *see also Sharp v. Chase Manhattan Bank USA, N.A. (In re Commer. Fin. Servs.)*, 350 B.R. 520, 545 (Bankr. N.D. Okla. 2005) (stating a business can exclusively be valued as a going concern so long as it is not on its deathbed). An entity is on its supposed deathbed when it "is in a precarious financial condition," and thus requires usage of the liquidation value of assets instead of the going concern value. *Schwinn Plan Comm.*, 192 B.R. at 486. Exactly when a business is on its deathbed is best determined by an expert. *See id.* In valuing an entity's assets so as to perform the Balance Sheet test, the entity's financial status, operation status and characteristics of its assets, serve to determine which valuation method is appropriate. *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 286 B.R. 54, 71 (Bankr. N.D. Ill. 2002) (Schmetterer, J.).

8

This is, as noted above, a determination made on a case-by-case basis. *See id.* There are instances in which an appropriate going concern valuation would include the liquidation value of assets; for example, a going concern valuation would still be appropriate even when a business is on a continual decline towards its deathbed, but not yet tucked in. *See Sharp*, 350 B.R. at 545.

In contesting summary judgment, the parties have brought these issues to the forefront. The Trustee seeks to overcome Associated's alleged "no evidence" Motion with the Report, but the Report uses a Balance Sheet test based on the liquidation value of the Debtors' assets. This, Associated contends, makes the Report inadmissible and necessitates summary judgment in Associated's favor.

C.  Admissibility of Expert Evidence

When a court is assessing evidence in the context of a motion for summary judgment, that evidence must be admissible. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court must therefore consider the admissibility of the Trustee's expert evidence.

1.  *Legal Standards*

As discussed above, a preliminary determination of admissibility of evidence at the summary judgment stage is governed by Civil Rule 56, made applicable in bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure. If a party challenges the admissibility of expert evidence offered in favor of or against a motion for summary judgment, the court must make primary determinations regarding the evidence's admissibility. "Expert testimony is not automatically admissible evidence. Thus, facts and opinions stated in an expert's affidavit may be considered only if they would be admissible under the Federal Rules of Evidence." *Dana Corp. v. American Standard*, 866 F. Supp. 1481, 1498 (N.D. Ind. 1994).

The admissibility of expert testimony is controlled by Rule 702 of the Federal Rules of Evidence, which states, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court interpreted Federal Rule of Evidence 702 to "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993).

In assessing the relevance of the expert's testimony, the court "must consider whether the testimony will assist the trier of fact with its analysis of any of the issues involved in the case." *Smith*, 215 F.3d at 718. The court is not focused on the veracity of the opinion, but is instead restricted "to determining whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith*, 215 F.3d at 719 (*citing Kumho*, 526 U.S. at 159 (Scalia, J., concurring)). The court's primary inquiry should focus on the expert's principles and methodology rather than its ultimate conclusions. *Daubert*, 509 U.S. at 595. Specifically, the court should determine if the administered tests and the sources of information upon which the expert used and relied were appropriate—and not the "factual underpinnings" of the testimony. *Walker v. Soo Line R.R.*, 208 F.3d 581, 587 (7th Cir. 2000).

9

Expert testimony must also be based on expertise, and not on "inferences from the record." *Dana Corp.*, 866 F. Supp. at 1501. Civil Rule 56(e) states that affidavits used in motions for summary judgment must "set forth facts" beyond evidence that is simply admissible; by implication, expert testimony should stem from a rational foundation. *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989). In other words, the expert opinion should "set forth facts" by using a reasonable and fact-based exposition, which is of greater importance to the court than the expert's ultimate conclusions. *Id.* The admission of expert testimony does not bind the factfinder to its contents, even if the opposing party does not present contrary evidence. *Dodge v. Stine*, 739 F.2d 1279, 1284 (7th Cir. 1984); *see also In re SSK Partners LLC*, Case No. 11bk49091, 2012 WL 4929019, at *6 (Bankr. N.D. Ill. Oct. 12, 2012) (Barnes, J.).

2. *Admissibility of the Report*

The Trustee presents the Report as evidence of the Debtors' solvency. There is little doubt that solvency is precisely where such opinions are valuable. *See, e.g., Grochocinsky v. Reliant Interactive Media Corp. (In re Gen. Search.com)*, 322 B.R. 836, 848-49 (Bankr. N.D. Ill. 2005) (Squires, J.). Associated, however, presents three arguments for the court to exclude the Report and thus, argues that they are entitled to summary judgment: (a) expert testimony is not admissible for the purposes of summary judgment; (b) the Balance Sheet liquidation analysis test is improper; and (c) the Report is not reliable under *Daubert*.[8]

   a. Admissibility of Expert Testimony at the Summary Judgment Stage

Associated relies on statements from the *Lake States* case to argue that contested expert evidence alone does not meet a party's burden at the summary judgment stage.[9] *Fisher v. Sellas (In re Lake States Commodities, Inc.)*, 272 B.R. 233, 244 (Bankr. N.D. Ill. 2002) (Sonderby, J.), *aff'd sub nom. Fisher v. Page*, Case No. 02 C 1588, 2002 WL 31749262 (N.D. Ill. Dec. 3, 2002). The *Lake States* case was decided on an unusually sparse record, however. *Id.* The expert's opinion in that case was the only evidence offered to prove a disputed fact, and the court therein was skeptical. As the court therein stated, "[w]hen there is a dearth of other fact evidence in the record, some courts give the expert testimony or report little or no evidentiary weight." *Id.* This is because "[i]f there are no facts in evidence, it is difficult to discern how an expert can assist the trier of fact." *Id.*

---

[8] In its Reply, Associated introduces the argument that the Trustee gives no evidence to establish the intent element of a fraudulent transfer claim as required under Section 548(a)(1)(B)(ii)(III) claim. While the Motion as a "no evidence" motion might at first blush seem to encompass this, upon closer examination, it does not. The Motion very narrowly challenges the Trustee's evidence, and makes no mention of evidence of intent. As such, this is a new issue. The late introduction of a new theory is, of course, improper. A movant generally may not introduce new issues on reply, as this does not provide the nonmoving party an opportunity to respond and therefore prevents the record from being fully developed for the court's consideration. *Aircraft Gear Corp. v. Marsh*, Case No. 02 C 50338, 2004 WL 2222262, at *2 (N.D. Ill. Sept. 30, 2004). The court therefore does not consider this argument.

[9] Associated also asks this court to strike the Report from the summary judgment record. This is improper procedure in the Seventh Circuit. As Judge Easterbrook informs, "there is no provision for a judicial blue pencil." *Custom Vehicles, Inc. v. Forest River, Inc.*, 464 F.3d 725, 727 (7th Cir. 2006).

10

Associated construes these statements so as to wholly exclude the category of expert reports from the realm of admissible evidence for the purposes of summary judgment. Associated's construction, however, is in direct conflict with both Federal Rule of Evidence 702 and *Daubert*.

Associated also overgeneralizes the holding in the *Lake States* case. *Lakes States* was not, for example, a ruling on a motion for summary judgment. Instead, as noted by the District Court on appeal, it was ruling under Rule 52(c) after the trustee therein had rested his case at trial. *See Fisher v. Page*, 2002 WL 31749262, at *5. The District Court placed some importance on the bankruptcy court's ability to weigh the expert's testimony at trial. *Id.* at *6 ("Here, the bankruptcy court was the factfinder; and it had the benefit of hearing [the expert's] testimony, including the cross-examination, in making a determination as to the weight, if any, to be given [the expert's] testimony and the [Expert's] Report."). Admissibility of expert reports in this context is a determination for the court under the facts of each case. Consequently, Associated's reliance on and interpretation of the *Lake States* case is misplaced.

As the Loan Closing Date was outside the ninety-day prepetition period, the presumption that the Debtors were insolvent as a matter of law does not apply. 11 U.S.C. §547(f). Associated contends that without expert testimony to support it, the Trustee's contention that the Debtors were insolvent on the Loan Closing Date fails.

The court does not disagree. If the expert report itself is inadmissible, even if the foregoing holds true, the evidentiary record will be commensurably harmed. However, for expert testimony to be excluded from the record, it must be so fundamentally unsupported that it cannot assist the trier of fact. *Dana Corp.*, 866 F. Supp. at 1499. The court cannot conclude that is the case here.

b. Appropriateness of the Balance Sheet Liquidation Analysis test

Associated further challenges the basis of the Report, arguing that Atkinson should have used going concern values instead of liquidation values in analyzing the Debtors' solvency via the Balance Sheet test. To reach the conclusion that the Debtors were insolvent on the Loan Closing Date, Atkinson uses documents from the record and the three solvency tests derived from the Bankruptcy Code. Atkinson's primary conclusion appears, however, to be based on a Balance Sheet analysis using the liquidation value of the Debtor's assets.

Atkinson states that the valuation expert is required to choose a premise of value that is "an assumption of the most likely set of transactional circumstances that may be applicable to the subject valuation." Report, at p. 23. He employs the "orderly liquidation" value because World Marketing Inc. and its subsidiaries had historically operated at a loss, Holdings' acquisition of World Marketing Inc., its assets, and subsidiaries before the Loan Closing Date was at a steep discount rate compared to their estimated fair values, and the Debtors lacked working capital and any possible source of working capital on the Loan Closing Date. Trustee's Stmt., at pp. 19-20.

The appropriate instances necessitating liquidation analysis are generally left up to valuation experts as there is no clear standard. *Schwinn Plan Comm.*, 192 B.R. at 486. Associated contends that the Seventh Circuit requires going concern values to be used. *See In re Taxman Clothing Co.*, 905 F.2d 166, 170 (7th Cir. 1990). It did not. In the *Taxman* case, the Seventh Circuit posited circumstances in which liquidation analysis is applicable in the absence of any such determinations from the bankruptcy judge. *Id.* at 169. While *Taxman* may have expressed a preference, it clearly

11

contemplated that each valuation method had its place. As a result, Associated overgeneralizes the *Taxman* holding. It remains for the court to determine which valuation method is appropriate under the circumstances of each case, and this determination is, as discussed below, a question for trial.

        c. Admissibility under *Daubert*

Last, Associated argues that Atkinson's evidence is not reliable under *Daubert*. Associated contends that Atkinson's conclusions are erroneous and based on incorrect data and/or valuation methods. *See* Reply, at p. 8. An incorrect conclusion, however, is alone not sufficient to bar expert testimony. *Daley*, 286 B.R. at 70. As Judge Schmetterer stated, "[e]ven an expert's flawed conclusion is capable of helping the factfinder to understand the evidence. Thus, [even if Associated's contentions were true,] the court does not have to accept the validity of the conclusions reached by [the expert] for the evidence offered by [the expert] to be admissible." *Id.* Atkinson's ultimate conclusion on the Debtors' solvency, then, even if erroneous, is insufficient on its own to bar his testimony or the admissibility of the Report under *Daubert*.

The focus instead is on the soundness of the methodology itself. *Id.* The court must determine "whether expert testimony is pertinent to an issue in the case and whether the methodology underlying that testimony is sound." *Smith*, 215 F.3d at 719. Here, Atkinson employed the liquidation value test based on his professional reading of the facts that the Debtors had historically operated at a loss, Holdings' acquisition of World Marketing Inc., its assets, and subsidiaries was steeply discounted in comparison to their estimated fair values, and the Debtors had insufficient working capital at the Loan Closing Date. Resp., p. 8. It is clear he uses accepted tests of examining solvency. Moreover, the factual underpinnings of the Report are admissible so long as they can be presented in a form that would at a later time be admissible at trial. *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014).

When viewed in the light most favorable to the Trustee, Associated's argument is really a challenge to the Report's weight and Atkinson's credibility. In an attempt to discredit the methodology used, Associated points to alleged errors in Atkinson's analysis to challenge its reliability. These challenges may, however, be appropriately taken up at trial in light of the expert's actual testimony. *In re SSK Partners LLC*, 2012 WL 4929019, at *6. "[C]redibility determinations are not proper on summary judgment." *Reid v. Climatemp, Inc. (In re 3RC Mech. & Contr. Servs., LLC)*, 505 B.R. 818, 825 (Bankr. N.D. Ill. 2014) (Schmetterer, J.). As the Seventh Circuit has stated, "[i]n deciding a motion for summary judgment, neither the district court nor this court may assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Bd. of Educ.*, 599 F.3d 617, 619 (7th Cir. 2010).

The admissibility of the Report is a credibility issue to be taken up at trial. Exclusion of the Report at this stage is therefore not proper under *Daubert*.

## CONCLUSION

The Motion fails to demonstrate that there is no genuine issue of material fact. The Debtors' solvency is a material issue that is in dispute, and as such cannot be determined without trial. The use of Atkinson's evidence will be determined in the context of that trial. As Associated has not succeeded in establishing that no evidence exists to support the Complaint, the court need

not consider whether Associated is entitled to judgment as a matter of law. Associated's Motion is, therefore, DENIED.

Dated: July 31, 2017

_____
Timothy A. Barnes
United States Bankruptcy Judge